KLUN, by guardian *ad litem,* Appellant, vs. RODDIS LUMBER & VENEER COMPANY, Respondent.

*January 7—January 28, 1913.*

*Master and servant: Defective machinery: Failure to instruct or warn servant: Cause of injury: Evidence: Taking case from jury.*

Plaintiff, who was injured in defendant's factory while operating a rip-saw to saw boards into strips, alleged that the gauge or guide regulating the width of the strips was insecurely fastened and loose, causing the board which was being sawed to pinch between the guide and the saw and to stop suddenly, thereby jerking his hand upon the saw; and that defendant was negligent in failing to instruct him or warn him of the danger.   Upon the

evidence (which failed to show that the guide was not fast and in proper position at the time in question; and showed, among other things, that the board then being sawed was sawed straight and of uniform width, that looseness in the guide would tend to prevent rather than cause pinching and could not have caused pinching at the time plaintiff was injured, and. that pinching frequently occurs from various causes in the ripping of boards and is one of the ordinary hazards of the employment), it is *held* that a verdict for defendant was properly directed on the ground that no negligence was shown on the part of defendant which had any causal connection with the accident.

APPEAL from a judgment of the circuit court for Wood county: JAMES O'NEILL, Judge. *Affirmed.*

On December 23, 1910, plaintiff was in the employ of the defendant company as a laborer, and in the performance of his duty was required to operate a rip-saw which was used for the purpose of sawing boards into strips. While engaged in such work he was injured and this action was brought to recover damages therefor. The accompanying illustration (facing p. 119), which was Exhibit A on the trial, is a photograph of the saw and equipment on which the accident occurred.

The complaint alleged that the saw was defective and out of repair, in that the gauge or guide, figures 7 and 8 on the photograph, was insecurely fastened and loose, and that by reason of such condition the board, as it was shoved against the saw by plaintiff, pinched between the guide and the saw, causing the board to stop suddenly, and jerking plaintiff's hand onto the saw. The complaint also alleged that the table between the operator and the saw was of such excessive length that it required the operator to reach a long distance over the table in passing the boards up to the saw, greatly increasing the danger of operation. The guide in question was adjusted by the operator at various distances from the saw to correspond with the width of the board to be sawed. In making the adjustment the lever, 1 and 2, is used to slide the

guide back and forth in the groove in which the bar, 11, is fitted. When moved to the desired position the guide is held in place by the set-screw, 5. The small lever, 4, is used to raise and lower a little pin which goes through the lever into any one of a series of holes, 3, at the end and to the side of the table. On the trial plaintiff testified that in adjusting the guide he did not use the set-screw, 5, and that he had no knowledge of its function and was not informed as to its use, but that he used the smaller lever and pin, 4, to set and fasten the guide in place when moved to the desired position; that the holes in the table into which the pin dropped, and the pin itself, were worn so as to permit the guide to wriggle and cause the pinching of the board between the guide and the saw.

The answer of the defendant was a general denial of the allegations of the complaint. At the close of the testimony the court directed a verdict in favor of the defendant, dismissing the complaint. From judgment entered on such directed verdict plaintiff appeals.

For the appellant there was a brief by *Goggins & Brazeau,* and oral argument by *Theo. Brazeau.*

For the respondent there were briefs by *Fisher, Hanna & Cashin,* and oral argument by *W. E. Fisher.*

BARNES, J. The defect complained of in the machine was of no consequence to employer or employee if the set-screw was used which was designed to lock the guide and keep it in place when it was so adjusted as to enable the operator to cut boards of the right width. The plaintiff testified that he was not advised and did not know what the function of the set-screw was and that he never used it. This is contrary to the evidence of two other witnesses, but the conflict raised a jury question on this point if it is material. The machine was not defective if properly operated, and the real question involving the negligence of the defendant arises

out of its alleged failure to properly instruct the plaintiff how the machine should be operated.

Plaintiff's main contentions are: (1) Where the set-screw was not used there might be some play in the guide so that either end could be moved back and forth a short distance. (2) The defendant's witness Joy testified that if this play was a quarter of an inch or greater it might cause pinching as a board was being ripped. (3) Defendant's witness Bores made some experiments some time after the accident and found that the play of the guide might be as great as one quarter or three eighths of an inch when the set-screw was loose. (4) The fact that the board that was being ripped came to a sudden stop indicated that such stoppage was not due to the ordinary pinching that is met with in the operation of such rip-saws, but was caused by the pinching due to the movable character of the guide. Here it might be remarked that the evidence is undisputed that pinching will frequently occur in the ordinary operation of rip-saws and that such pinching is due to a variety of causes. The plaintiff did not know whether the guide was in its proper place or not while he was ripping the board that caused his injury. Neither did he know whether the board was sawed straight or crooked, or of uniform width or wedge-shaped. He did testify that when he was pushing the board it stuck and jumped, that he then pulled it back and "couldn't get it through," and then he ran it back again, and when it was through the saw, or nearly so, it pinched and came to a sudden or quick stop and his hand went into the saw. He thinks the loose guide must be responsible for the sudden stoppage of the board, because on other occasions when he was operating the saw in question the stoppage would be more gradual.

The decision of the circuit court was right for a number of reasons.

1. There was no evidence to show that the guide was not fast and in proper position when the plaintiff was injured.

He observed the operation of the saw and the guide some time thereafter, and after such observation came to the conclusion that the guide must have been the cause of the pinching. Such conclusion rested largely if not wholly on conjecture. The witness Kehrberg testified that he examined the guide immediately after the accident and that it was solid and properly set. There is no dispute of this evidence, except that Kehrberg testified that the thumb-screw was set, while the plaintiff's evidence tended to show that it was not. The guide might be held firmly in place, however, without the thumb-screw being set.

2. The same witness testified that the board which was being sawed when plaintiff was injured was sawed straight and of an uniform width. This evidence is not contradicted, except that the witness and plaintiff do not agree as to the width or kind of a board that was being sawed. It may be that this difference would raise a jury issue, although Kehrberg did not pretend to remember accurately the width of the board. There is no dispute that he examined the board which he found on the saw table immediately after the accident.

3. A number of witnesses testified that looseness in the guide would have a strong tendency to prevent pinching, instead of causing it. This evidence was not disputed. It is argued that the evidence of the witness Joy is to the contrary. The evidence of Joy is that looseness of the guide would not cause binding of the saw after a board was sawed through. This statement he qualified by saying, "It might pinch enough to require a harder pressure to force the board through." This at best would amount to a case of ordinary pinching. We think the evidence shows conclusively that the board was sawed through when the plaintiff was injured. He so testified several times and on several different occasions. He also said that it was sawed through or was within a quarter or half an inch of being sawed through when the

accident occurred.   Another witness testified that the board
was sawed through.

4. The evidence of all of the witnesses who testified on
the subject, including the plaintiff, is to the effect that pinch-
ing is something that frequently occurs in the ripping of
boards and that it is due to a variety of causes.   It was one
of the ordinary hazards of the employment.   That the pinch-
ing which would result from a loose guide would be any dif-
ferent from that produced by other usual and ordinary causes
is purely a matter of speculation and conjecture.

5. The physical situation negatives the alleged fact that
the pinching was due to the looseness of the guide.   If the
guide was loose so that it might be moved back and forth lat-
erally, it pivoted upon the point designated 5 on Exhibit A,
which is reproduced in the statement of facts.   The operator
stood to the left of the lever marked 1, 2, and 9.   The dis-
tance from the end of the table where he stood to the teeth
of the saw was twenty-nine inches.   The distance from the
teeth of the saw to the fulcrum at figure 5 is not given in the
testimony by any of the witnesses, but was stated on the oral
argument to be about half the distance from the teeth of the
saw to the end of the table.   The photograph of the saw is
taken from an angle that really shows the distance to be less
than it is, but still it shows that the point 5 is considerably
nearer to the operator than the teeth of the saw.   If the end
of the guide, marked 7, was pushed to the right when plaint-
iff started to operate the saw, the tendency would be to cut
the board wedge-shaped, and as the board was pushed along
there might be some tendency to bind.   However, after the
end of the board which the operator was pushing passed the
point 5, and the board was sawed through or nearly so, the
pressure against the guide would have a tendency to throw
the end marked 7 to the left and the end marked 8 to the
right, thus relieving the pressure that might otherwise be ex-
erted against the saw.'

For the reasons stated we conclude that no negligence was shown on the part of the defendant which had any causal connection with the accident.

*By the Court.*—Judgment affirmed.